**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| RYAN HAYGOOD, DDS, ET AL. | CIVIL ACTION NO. 13-0335 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BRIAN BEGUE, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss for Failure to State a Claim under Which Relief May Be Granted under Rule 12(b)(6), and, in the Alternative, Motion for Summary Judgment and Motion for More Definite Statement under Rule 12(c) (Record Document 131) filed by Defendant H.O. Blackwood, D.D.S. ("Dr. Blackwood"). Plaintiffs Ryan Haygood, D.D.S. and Haygood Dental Care, LLC (hereinafter referred to as "Dr. Haygood" or the "Haygood Plaintiffs") opposed the motion. See Record Document 156. For the reasons set forth below, the Motion to Dismiss under Rule 12(b)(6) is **GRANTED**.[1]

**BACKGROUND**

The allegations in the instant suit relate to formal complaints by patients and other dentists which eventually led to an investigation and administrative proceeding wherein Dr. Ryan Haygood's dental license was revoked by the Louisiana State Board of Dentistry ("Dental Board"). The Dental Board initially became involved because of a complaint against Dr. Haygood, claiming that he recommended extensive and expensive treatment plans after over-diagnosing/unnecessarily diagnosing patients with peridontal disease. The investigation and resulting administrative proceeding took place over a three year period.

---

[1] This motion was decided pursuant to Rule 12(b)(6); thus, the Court did not reach Dr. Blackwood's alternative Rule 56 motion or Rule 12(c) motion.

On November 8, 2010, at the conclusion of four days of adversarial hearings, which included the presentation of witnesses, experts and medical/dental evidence, a three-member disciplinary panel revoked Dr. Haygood's dental license and levied fines against him. This punishment was imposed due to Dr. Haygood's violations of the Dental Practice Act. Louisiana Revised Statute Section 37:751 *et seq.*

Dr. Haygood appealed the November 8, 2010 decision of the Dental Board to the Civil District Court of Orleans Parish ("CDC") Docket No. 2010-12060. On May 31, 2011, the CDC affirmed some of the findings, but remanded part of the case the to Dental Board due to the erroneous inclusion of charges against Dr. Haygood that were previously dismissed. In all other respects, the CDC affirmed the Dental Board's decision. Dr. Haygood appealed the portion of the May 31, 2011 decision of the CDC which was affirmed to the Louisiana Fourth Circuit Court of Appeal, Docket No. 2011-CA-1327.

On August 29, 2011, the Dental Board issued a decision regarding the remanded portion of the suit. It again levied fines against Dr. Haygood and affirmed the revocation of his dental license in its Amended Decision After Remand. This decision was also appealed by Dr. Haygood to the CDC, which affirmed the ruling on December 9, 2011. The two decisions by the CDC (May 31, 2011 and August 29, 2011) were consolidated on appeal to the Louisiana Fourth Circuit Court of Appeal. The Fourth Circuit vacated and remanded the Dental Board's ruling, finding that the Dental Board's independent counsel participated in the administrative hearing in dual roles as prosecutor and adjudicator in violation of Dr. Haygood's due process rights.

The Haygood Plaintiffs filed the instant federal lawsuit on February 13, 2013. See Record Document 1. They later added Dr. Blackwood as a defendant in his individual and

official capacities on March 7, 2014. See Record Document 100 (First Supplemental, Amended and Restated Complaint) at ¶ 13. As to Dr. Blackwood, the Haygood Plaintiffs allege:

> Beginning no later than March 22, 2007, Dr. H.O. Blackwood, a director of the Board and competitor of Dr. Haygood from northwest Louisiana, communicated directly and indirectly with C. Barry Ogden and Camp Morrison, and developed a scheme to contact "very motivated" dentists in the Shreveport-Bossier area (Drs. Hill, Hermes, Colquitt and Black) seeking additional complaints against Dr. Haygood. Discussions with these dentists led to Morrison's "concerns" and "questions" regarding a number of other people who had not filed any complaints with the Board.
>
> . . .
>
> At all times pertinent herein, Dr. Blackwood was a member of the [Dental Board] and the Board District Representative for Northwest Louisiana. He was also a direct competitor of Dr. Haygood.
>
> Dr. Blackwood has a deeply negative personal and professional predisposition toward Dr. Haygood that has served as motivation for his orchestrated efforts to pursue disciplinary action against Dr. Haygood.
>
> By virtue of Dr. Blackwood's long tenure and forceful personality, he exercises unusually strong influence with the Board.
>
> Plaintiffs are informed, believe, and allege that during Dr. Blackwood's long tenure on the Board, he has permitted his personal disposition toward particular dentists, especially in the Shreveport Bossier City metropolitan area, to seek the commencement of proceedings by the Board against those he dislikes.
>
> Likewise, Dr. Blackwood has a reputation among some of his peers as being of assistance in causing the prompt, inexpensive termination of such disciplinary proceedings. Accordingly, Plaintiffs are informed and believe, and therefore allege, that some of Dr. Blackwood's peers seek to ingratiate themselves with him by, inter alia, making financially beneficial patient referrals to him.
>
> The Board has adopted a rule forbidding Board District representatives from participating in proceedings against dentists from their district in order to avoid the appearance of impropriety and partiality for or against that dentist. Dr. Blackwood acknowledges such a rule.

3

> Though Dr. Blackwood has denied any participation in the proceedings against Dr. Haygood, on the basis that such participation would both appear to be and be unfair, Dr. Blackwood, in fact, played an active role in the investigation and proceedings. Dr. Blackwood is a member of the conspiracy to damage Dr. Haygood and has been a part of that effort since at least March 21, 2007, when he encouraged the Board, Barry Ogden, Camp Morrison, and/or other dentists to take action adverse to Dr. Haygood.
>
> Dr. Blackwood has actively sought to conceal both the existence of the conspiracy and his role in it by providing false testimony in this action as recently as January 2013 regarding his actions that materially supported the illegal action taken against Dr. Haygood.

Id. at ¶¶ 54, 75-82. As to Dr. Blackwood, the Haygood Plaintiffs allege damages arising out of violations of 42 U.S.C. § 1983 and 15 U.S.C. §§1 and 2, as well as Louisiana state law claims for defamation and for violations of the Louisiana Unfair Trade Practices Act. See id. Dr. Blackwood has now filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim. See Record Document 131. He first argues that he is entitled to qualified immunity as a member of the Dental Board pursuant to La. R.S. 37:791 and La. R.S. 13:3715.3. See id.[2] Dr. Blackwood further contends that the Haygood Plaintiffs' Section 1983 claims, defamation claims, and unfair trade practices claims have prescribed or, alternatively, fail under Rule 12(b)(6). See id.

## LAW AND ANALYSIS

**I.    Legal Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the

---

[2]The Court did not reach the issue of immunity, as the motion was decided on the grounds of prescription and Rule 12(b)(6) plausibility pleading standards.

4

plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

Although courts generally are not permitted to review materials outside of the pleadings when determining whether a plaintiff has stated a claim for which relief may be granted, there are limited exceptions to this rule. Specifically, a court may consider documents attached to a Fed. R. Civ. P. 12(b)(6) motion to be part of the pleadings if the plaintiff refers to those documents and they are central to the claim. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-499 (5th Cir. 2000); Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). Additionally, pleadings filed in state or other federal district courts are matters of public record and the Court may take judicial notice of those documents in connection with a Rule 12(b)(6) motion to dismiss. See Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

## II. Claims against Dr. Blackwood.

The Haygood Plaintiffs allege a violation of Title 42, United States Code, Section 1983. To state a claim under this statute, the Haygood Plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under the color of state law. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 985 (1999). "[T]he under color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id.

The Haygood Plaintiffs argue that Defendants, acting individually and in conspiracy with one another, acting under color of state law, deprived and denied them of their constitutional and/or statutory rights. See Record Document 100 at ¶ 167. More specifically, the Haygood Plaintiffs allege:

> [T]hat by virtue of Defendants' participation in highly irregular and unlawful actions in connection with the investigation, prosecution and adjudication of decisions by the [Dental Board] . . ., [D]efendants knowingly and intentionally, or with reckless disregard for the truth, deprived Dr. Haygood of his right to a fair and impartial hearing; presented knowingly false or exaggerated claims; provided evidence obtained through unlawful means; and took other actions which deprived Dr. Haygood of the right and privilege to conduct his livelihood as a licensed dentist in the State of Louisiana.
>
> [T]hat Defendants' institution of prosecution of Plaintiffs was motivated by (I) actual and implied malice; (ii) improper competitive considerations and; (iii) of financial considerations to permit the Board to make recoveries of fines.
>
> [T]hat Defendants, acting with and obtaining significant aid from their co-conspirators on the [Dental Board], knowingly engaged in conduct which deprived Dr. Haygood of due process under Amendment XIV of the United States Constitution. . . .
>
> [T]hat [D]efendants, acting with and obtaining significant aid from their co-conspirators on the [Dental Board], knowingly and in bad faith, instituted

6

>sham proceedings against Plaintiffs, without probable cause, with the intent to deprive Dr. Haygood of his dental license.

Id. at ¶¶ 168-171.

This Court will first address the timeliness of the Section 1983 claims. Claims brought under Title 42, United States Code, Section 1983 of the United States Code are subject to state statutes of limitation for personal injury actions. See Owens v. Okure, 488 U.S. 235, 249-251, 109 S.Ct. 594, 581-582 (1989). In Louisiana, there is a one year prescriptive period for Section 1983 claims, as established by Louisiana Civil Code Article 3492. See Hawkins v. McHugh, 46 F.3d 10, 12 (5th Cir. 1995); Smith v. Humphrey, No. 10-1070, 2012 WL 1970883 *2 (W.D. La. 04/09/12); adopted by 2012 WL 1969317. In the case of an alleged conspiracy, the prescriptive period begins to toll from the moment that the plaintiff knew or should have known of the overt acts involved in the conspiracy. See Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987); Smith, 2012 WL 1970883 at *3. Therefore, the claims asserted under Section 1983 in the instant case are subject to a one year prescriptive period.

Dr. Haygood filed a state court claim against certain defendants on September 27, 2011. See Record Document 131, Exhibit A. Dr. Blackwood was not named as a defendant in that original state petition. The factual allegations in the state court petition are the same allegations made in the instant federal lawsuit. On June 28, 2013, Dr. Haygood amended the state court petition for the third time and named Dr. Blackwood as a defendant. See id., Exhibit B. Dr. Haygood also sought, for the first time in state court, damages for violations of Section 1983 in the Third Supplemental and Amended Petition for Damages. See id.

Almost two years elapsed between the initial filing in state court and the filing of the Third Supplemental and Amended Petition for Damages, which added both Dr. Blackwood as a defendant and Section 1983 claims. Likewise, almost two years elapsed between the filing of the initial proceeding in state court in September 2011 and the filing of the federal lawsuit in February 2013. This Court holds that the Haygood Plaintiffs clearly knew, or should have known, of the overt acts which might constitute a Section 1983 violation when the state court lawsuit was filed in September 2011. The Court is also unconvinced that any of the allegations in the state court petition were sufficient to interrupt prescription. See Ford v. Stone, 599 F.Supp. 693 (M.D. La. 1984). Therefore, this Court finds that the alleged wrongdoing under Section 1983 by the instant Defendant has prescribed under Louisiana law.

The Court finds Brossette v. City of Baton Rouge, 837 F.Supp. 759, 762 (E.D. La. 1993) to be instructive on this issue. In Brossette, a bar owner's liquor license was suspended by the Alcoholic Beverage Control Board for violations of a Baton Rouge ordinance. The suspension was appealed through the Louisiana courts, and the Louisiana Supreme Court ultimately reversed the decision and remanded the case for the district court for a new trial. See id. at 761. Following the Louisiana Supreme Court decision, Brossette filed a Section 1983 claim in federal court. The federal court determined that the plaintiff's cause of action arose from a "single act" against Brossette, the suspension of this license. Therefore, the prescriptive period began to toll from the day he received notice that his license was suspended. See id. at 763. Accordingly, the claim was already prescribed on the day he filed the federal proceedings, more than a year after Brossette received notice of the suspension. See id. at 762.

The rationale applied in Brossette is directly on point in the instant matter. Dr. Haygood received notice of the revocation of his license on or about November 8, 2010. This single act of the Dental Board revoking his license provides the date from which the one-year prescriptive period began to toll. Therefore, the § 1983 claims against Defendants had already prescribed when the federal suit was filed on February 13, 2013.[3]

The Court additionally notes that even if this action was not prescribed, the Rule 12(b)(6) Motion filed by Dr. Blackwood nonetheless would be granted because the bald conclusory allegations that he was involved in a conspiracy with the Dental Board fails the plausibility standard established in Twombly and Iqbal. See Twombly, 550 U.S. 544, 127 S.Ct. 1955; Iqbal, 556 U.S. 662, 129 S.Ct. 1937.

**B.    The Sherman Act Claims.**

The Sherman Act, 15 U.S.C. §§ 1 and 2, provides the framework to forbid monopolies within the United States. Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." Full Draw Prods. v. Easton Sports, Inc., 182 F.3d 745, 750 (10th Cir. 1999), citing 15 U.S.C. § 1. Section 2 prohibits "monopoliz[ing], or attempt[ing] to monopolize, or combin[ing] or conspir[ing] with any other person or persons, to monopolize any part of the trade or commerce among the several States." Id., citing 15 U.S.C. § 2.

---

[3]As noted by Dr. Blackwood, this Court has previously addressed this same prescription issue and held that the Haygood Plaintiffs' Section 1983 claims are prescribed. See Record Document 110 at 4-6. Thus, the Section 1983 claims against the instant Defendants shall be dismissed "under the law of the case." See Omar v. Casterline, 414 F.Supp.2d 582, 594 (W.D. La. 2006), citing Loumar, Inc. v. Smith, 698 F.2d 759, 762 (5th Cir.1983) (noting rationale for "law of the case doctrine . . . is the same as that for *stare decisis*: a court will follow a ruling previously made unless the prior ruling was erroneous, is no longer sound, or would work an injustice").

Pursuant to the Sherman Act, the Haygood Plaintiffs allege that there was a conspiracy to exclude them from the practice of dentistry in the Shreveport-Bossier metropolitan area (the relevant geographical market) by means of improper conduct, namely through adverse and unfair peer review proceedings. See Record Document 100 at ¶¶ 164-165. The Haygood Plaintiffs argue that such "misconduct" affected patient choice and interfered with competition in the marketplace. Id. at ¶ 165.

Section 1

To establish a violation under Section 1, the plaintiff must prove: (1) the defendants engaged in a conspiracy, (2) that restrained trade (3) in the relevant market. See Gold Bridge Technology, Inc. v. Motorola, Inc., 547 F.3d 266, 271 (5th Cir. 2008), *cert denied* 556 U.S. 1216 (2009); Apani Sw. Inc. v. Coca-Cola Enter., Inc., 300 F.3d 620, 627 (5th Cir. 2002); Johnson v. Hosp. Corp. of Am., 95 F.3d 383, 392 (5th Cir. 1996). Simply put, Section 1 requires concerted action that restrains trade. See Am. Needle, Inc. v. Nat'l Football League, 560 U.S. 183, 190, 130 S.Ct. 2201, 2208 (2010). As to the first element, i.e., a conspiracy, "the complaint must contain enough factual matter to suggest that an agreement among the alleged conspirators was actually made." Dowdy & Dowdy P'ship v. Arbitron, Inc., No. 2:09CV253, 2010 WL 3942755, *3 (S.D. Miss. 2010)(citing Twombly, 550 U.S. at 556, 127 S.Ct. at 1965). The Dowdy court reasoned:

> A "bare allegation of conspiracy" and "a conclusory allegation of agreement at some unidentified point" are insufficient to plead illegal antitrust activity. Not only does the naked allegation of a conspiracy, without additional facts, not state a plausible antitrust claim, such conclusory allegations are not entitled to be accepted as true for the purposes of this motion.

Id. (internal citations omitted).

Here, the Haygood Plaintiffs have at best alleged circumstantial evidence that some

10

defendants simply conversed with other defendants. They never provide factual support that those conversations were for the intent and purpose of reaching an agreement to unreasonably restrain trade of dental services among the several States. While circumstantial evidence can be sufficient to survive Rule 12(b)(6) scrutiny, it must tend to prove that Defendants and others "had a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1471 (1984). Such is simply not the case in the instant matter. The Haygood Plaintiffs have not plead enough facts to suggest a prior agreement between the Defendants. The First Supplemental, Amended and Restated Complaint is silent as to (1) when, where, or how a conspiracy was formed; (2) that Dr. Blackwood, in fact, agreed to restrain the trade of dental services; (3) that Dr. Blackwood communicated with anyone regarding the restraint of trade, or (4) that Dr. Blackwood shared a common intent to restrain trade. The Haygood Plaintiffs' factual allegations as to Section 1 of the Sherman Act are simply bare allegations and fail to meet the necessary pleading requirements to survive a Rule 12(b)(6) challenge. Accordingly, the Rule 12(b)(6) motion is **GRANTED** as to the Section 1 claim.

Section 2

In contrast to Section 1, Section 2 of the Sherman Act "covers both concerted and independent action, but only if that action monopolizes or threatens actual monopolization, a category that is narrower than restraint of trade." Am. Needle, Inc. v. Nat'l Football League, 560 U.S. 183, 190, 130 S.Ct. 2201, 2208 (2010) (internal citations and quotations omitted). The Haygood Plaintiffs have not asserted an actual monopoly; thus, their cause

11

of action lies in an "attempt to monopolize." See Record Document 100 at ¶¶ 93-95; Full Draw Prods., 182 F.3d 745.

"To state a claim for attempted monopolization under Section 2 of the Sherman Act, the plaintiff must plead: (1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt." Full Draw Prods., 182 F.3d at 756. Here, the Court finds that the Haygood Plaintiffs have failed to sufficiently plead how Dr. Blackwood was capable of monopolizing the dental services market or how Dr. Blackwood conspired with someone capable of monopolizing the dental services market. There are no plausible factual allegations that Dr. Blackwood took any action aimed at achieving a "dangerous practice of monopolization" in the area of dentistry. See generally Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 455-457, 459, 13 S.Ct. 884, 890-891, 892 (1993) ("We hold that petitioners may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize."). Accordingly, the Rule 12(b)(6) motion is **GRANTED** as to the Section 2 claim.

  **C.** **State Law Defamation Claim.**

The Haygood Plaintiffs assert a claim for defamation under Louisiana state law, alleging:

> Dr. Haygood and Haygood Dental Care, LLC allege that the Defendants violated Louisiana state law by acting in concert to proliferate malicious and non-privileged communications, both for initial publication and foreseeable republication, which communications were designed to cause harm to Haygood in the dental profession and among his friends, colleagues and patients, actual and potential.

12

Record Document 100 at ¶ 174. The Haygood Plaintiffs further allege that "Dr. Blackwood [had] a deeply negative personal and professional predisposition toward Dr. Haygood." Id. at ¶ 76. They allege that "Dr. Blackwood, in fact, played an active role in the investigation and proceedings." Id. at ¶ 81. Finally, the Haygood Plaintiffs allege that Dr. Blackwood provided "false testimony in this action." Id. at ¶ 82.

"To state a cause of action for defamation, the plaintiff must allege all of the following elements: (1) defamatory words; (2) publication or communication to persons other than the one defamed; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." Lentini v. NW. Louisiana Legal Servs., Inc., 36,620 (La. App. 2 Cir. 3/5/03), 841 So. 2d 1017, 1020, *writ denied*, 2003-0996 (La. 5/30/03), 845 So. 2d 1052. "Words that expressly or implicitly accuse another of criminal conduct or that, by their nature, tend to injure one's personal or professional reputation are considered defamatory *per se*. If the plaintiff proves publication of defamatory *per se* words, the elements of falsity, injury and malice are presumed, although they may be rebutted by the defendant." Sommer v. State, Dep't of Transp. & Dev., 97-1929 (La. App. 4 Cir. 3/29/00), 758 So. 2d 923, 939 (La. Ct. App.), *writ denied sub nom.*, Sommer v. State, DOTD, 2000-1759 (La. 10/27/00), 772 So. 2d 122. "An expression of opinion on a matter of public concern, which does not contain a provably false factual connotation, cannot support a defamation action." Moore v. Cabaniss, 29,834 (La. App. 2 Cir. 9/24/97), 699 So. 2d 1143, 1146, *writ denied*, 97-2667 (La. 1/9/98), 705 So. 2d 1108, *citing* Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695 (1990); Romero v. Thomson Newspapers, 94-1105 (La.1/17/95), 648 So.2d 866, *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2556 (1995). Moreover, under Louisiana law, "a petitioner alleging a cause of action for defamation must set forth in the petition with reasonable specificity the

13

defamatory statements allegedly published by the defendant." Badeaux v. Sw. Computer Bureau, Inc., 2005-0612 (La. 3/17/06), 929 So. 2d 1211, 1219. While "it is not necessary for a plaintiff to state verbatim the words on which he bases his cause of action, but he must allege a state of facts or condition of things which would show fault under article 2315." Id.

The Court finds that the factual allegations in the Haygood Plaintiffs' First Supplemental, Amended and Restated Complaint fail to meet the pleading requirements under both federal law and Badeaux. There are no allegations or statements of fact as to what the defamatory words were and/or how the unknown statements were false. The basis of the defamation claim appears to be a conclusory reference to "false testimony," Dr. Blackwood's "deeply negative personal and professional predisposition toward Dr. Haygood," and/or Dr. Blackwood's "strong influence" with the Dental Board. Record Document 100 at ¶¶ 76-77, 82. These factual allegations are, again, bald accusations and, at best, demonstrate a medical difference of opinion concerning treatment plans, not defamatory words *per se*. Accordingly, the Rule 12(b)(6) motion is **GRANTED** as to the defamation claim.

### D. Louisiana Unfair Trade Practices Act.

La. R.S. 51:1405(A) prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce." Courts have the power to determine, on a case-by-case basis, the type of conduct that falls within that category. See Sheramine Services, Inc. v. Shell Deepwater Production Company, Inc., 2009-1633 (La. 04/23/10), 35 So.3d 1053, 1059. In Sheramine, the Louisiana Supreme Court required that a plaintiff must

14

allege conduct that "offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantial[ly] injurious." Id.; Cargill, Inc. v. Degesch America, Inc., 875 F. Supp. 2d 667, 676 (E.D. La. 2012); Jones Energy Co., LLC v. Chesapeake Louisiana, L.P., 873 F. Supp. 2d 779, 789 (W.D. La. 2012). Here, the factual allegations made against Dr. Blackwood, i.e., his deeply negative personal and professional predisposition toward Dr. Haygood; his strong influence with the Dental Board; encouraging others to take action against Dr. Haygood, fail to rise to the level of facts necessary to support a claim under the Louisiana Unfair Trade Practices Act. Therefore, the Motion to Dismiss the unfair trade practices claim is **GRANTED**.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss (Record Document 131) filed by Dr. Blackwood is **GRANTED**. The Court finds that the Haygood Plaintiffs' Section 1983 claims are prescribed and that the Sherman Act, defamation, and Louisiana Unfair Trade Practices Act claims fail under Rule 12(b)(6) and the Twombly/Iqbal standard. All of the Haygood Plaintiffs' claims against Dr. Blackwood are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of March, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE